In the Matter of the Arbitration between DAVID VOGEL, Appellant, and DAVID W. LEWIS, Respondent.

First Department, March 29, 1966.

*Seymour L. Morse* for appellant.

*Leon M. Labes* for respondent.

Stevens, J. These appeals are from an order entered April 2, 1965, denying petitioner's application for a stay of arbitration, and from an order entered August 20, 1965, granting petitioner's motion for reargument and upon reargument adhering to the prior decision of April 2, 1965.

For many years prior to October 16, 1962, Certified Moving & Storage Co., Inc. (Certified), a New York corporation, was engaged in the business of moving and storage and was possessed of a good reputation. It operated out of a warehouse and offices at 130 East 12th Street, New York City. The owners of the stock of Certified prior to October 16, 1962 were Julius Chomsky, Oscar Horowitz, David Vogel (the petitioner herein) and their respective wives. These parties comprise the stockholders of 130 East 12th Street Corporation, owner of the property at 130 East 12th Street.

October 16, 1962, petitioner, David Vogel, and respondent purchased all of the stock of Certified. Prior thereto Vogel owned 25% of the stock. Thereafter Vogel and Lewis each

owned 50% of Certified, with Vogel as president and director and Lewis as secretary-treasurer and director. On that date Vogel, Lewis and Certified entered into an agreement, drawn by petitioner's attorney, "to provide for their interests and status in Certified." Paragraph Sixth thereof provides: " The parties hereto hereby expressly agree that in the event of a dispute, or difference, arising between them *in the course of their transaction with each other,* under the terms of this agreement, such dispute or difference shall be settled between them by arbitration. In such event, each of the parties to such dispute shall appoint one arbitrator; and, if the arbitrators are not able to agree after the dispute is submitted to them, these arbitrators, in turn, are to agree upon an umpire. And the parties to the dispute hereby agree to abide by the decision of the arbitrators; or in the alternative, to abide by the decision of any arbitrator and the umpire." (Italics supplied.)

At the time Vogel and Lewis took over Certified, a close corporation, they obtained a lease on the warehouse where the business operated for five years commencing November 1, 1962, with an option to Certified to purchase the property in question for $175,000. Lewis sought to have Certified exercise the option to purchase in order to strengthen and even assure the continuance of the business. It is not disputed in the record that exercise of the option would mean business security and, additionally, would be of considerable benefit to Certified. If the lease is not renewed Certified is effectively out of business insofar as Lewis is concerned, for the landlord is comprised of the persons who formerly owned and operated Certified, including Vogel. Vogel does not dispute Lewis' sworn assertion that Vogel revealed he has some sort of agreement with his former partners, that he considers himself morally and legally bound to them, and therefore could not agree to exercise the option to purchase, and that Vogel made it clear it is to his own advantage and personal interest to keep the ownership of the property " as is ".

A meeting of the board of directors of Certified, i.e., Vogel and Lewis, was held October 21, 1964. At that meeting Lewis voted to exercise the option and Vogel voted against the resolution. When further discussion failed to resolve the issue Lewis demanded arbitration pursuant to paragraph Sixth of the October 16, 1962 agreement on two issues: (1) Shall Certified exercise its option to purchase pursuant to terms of the Lease? (2) Shall Vogel be removed as officer and director of Certified on ground that he has interests adverse to the best interests of Certified?

Vogel asserts on appeal, as he urged below, that there is no agreement to arbitrate disputes between the parties, and that the arbitration sought would be in violation of section 701 of the Business Corporation Law.

Section 701 of the General Business Law (eff. Sept. 1, 1963) provides that the *business* of a corporation shall be *managed* by its board of directors (italics ours). Management means control, superintendence or guidance. The section presupposes continued corporate existence; otherwise there will be no business to manage.

Directors in their dealings with third persons are, in law, considered somewhat as agents for the corporation, but in their relation to the property of the corporation their relationship is, in equity, that of a fiduciary. As such they are bound to standards of honesty and morality, and to care for the corporate interests in all good faith (Business Corporation Law, § 717; *Hazard* v. *Wight*, 201 N. Y. 399; *Winter* v. *Anderson,* 242 App. Div. 430, 431). Any act, or knowledgeable failure to act, which could fairly result or reasonably be expected to result in the termination of the corporate existence, can hardly be termed or properly classified as a provision dealing with corporate management. Nor should a corporate officer or director be permitted to derive a personal profit or advantage by reason of his position, which is not enjoyed in common by all the stockholders (*McClure* v. *Law,* 161 N. Y. 78, 81). The undisputed evidence in the record indicates that Vogel considers the interest of Certified as secondary and the personal benefit to be derived by him (and possibly his former associates) as a result of his agreement with the former owners as paramount.

As pointed out the purpose of the agreement between Vogel, Lewis and Certified is " to provide for their interests and status in Certified." The parties in such agreement provided for management and operation, stock issuance and ownership, as well as a sale thereof with first option, and that the agreement should bind the parties, their heirs, executors and administrators. They expressly agreed " in the event of a dispute, or difference, arising between them in the course of their transaction with each other ", under the terms of the agreement to settle the same by arbitration. The provision for arbitration should be read against the factual background that at the time Vogel and Lewis took over Certified they obtained a lease containing the option in question. It must then have been within the contemplation of the parties that a dispute or difference concerning the exercise of the option should be referred to arbitration. Moreover, the question to exercise or not to exer-

cise the option, under the circumstances here present, is not one which deals with problems of everyday corporate management, or whether a particular deal in the exercise of business judgment would redound to the corporate benefit. It is more fundamental involving, as it does, continued corporate existence; a one-time " transaction with each other ", in the words of the arbitration clause, between two parties who are virtually partners, and which " transaction " could result in destruction of the parties' entire enterprise.

Vogel's contention that there was no agreement to arbitrate the disputes rests upon his argument that the scope of the agreement does not embrace the issues raised and that the question is one of business judgment. He does not question the execution of the agreement. Certainly, if all involved here were discretion and the exercise of business judgment in the management of corporate affairs it is doubtful that arbitration could be used or applied as a substitute in light of the language of the statute (General Business Law, § 701).

In *Matter of Burkin* (*Katz*) (1 N Y 2d 570 [1956]) " the removal of a director of a corporation for misconduct can be the subject of an action, so as to be arbitrable under section 1448 of the Civil Practice Act " (p. 571). Subdivision (d) of section 706 of the Business Corporation Law now permits an action to be brought to procure a judgment removing a director for cause " by the attorney-general or by the holders of ten percent of the outstanding shares, whether or not entitled to vote." However, such an issue is now arbitrable. CPLR 7501, a successor statute of section 1448, goes even further and must be read in light of both legislative change since 1956 and judicial construction. " A written agreement to submit any controversy thereafter arising * * * is enforceable without regard to the justiciable character of the controversy ". The court is not to consider whether the claim is tenable, nor the merits of the dispute (CPLR 7501; see, also, CPLR 7503, subd. [a]). The trend is undoubtedly towards greater stockholder participation (General Business Law, § 620), and greater liberality in application of arbitration provisions. " There seems to be no reason why arbitrators may not be useful in resolving issues which involve some business judgment so long as they are not required to assume a continuing burden of management " (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7501.18; see, also, Arbitration in Close Corporations, 63 Col. L. Rev. 267).

Obviously the question whether or not to exercise the option to purchase does not require assumption of any burden of con-

tinuing management, but rather if Certified is to have a measure of business security and assurance of continued existence.

It must have reasonably been within the contemplation of the parties, acting in good faith when the corporation was formed, should the business prove successful, as is the case here, that all necessary or proper steps to assure its continued existence would be co-operatively undertaken. Recognizing that disputes could arise, the parties provided for arbitration. To read a limitation of exclusion at the price of continued corporate existence of this close corporation is to disregard the plain language of paragraph Sixth, and to impose a restriction, possibly fatal, where the issue sought to be arbitrated is nowise offensive to our public policy. This we should not do.

The orders appealed from should be affirmed, with costs and disbursements to respondent.

STEUER, J. (dissenting). We dissent. The parties are the sole stockholders of a corporation engaged in the moving and warehouse business. Each of the parties owns half of the stock. They acquired their interests by purchase from former stockholders. Upon their entering into the business they signed an agreement providing for equal salaries, equal division of profits, and the right to purchase the other's stock in the event either desired to sell. The agreement provides for arbitration in case of a dispute.

It appears that the corporation is the lessee of a warehouse wherein its business is conducted. The lease contains an option to purchase. One of the parties desires to have the corporation exercise the option, the other does not. It is this issue on which the respondent has demanded arbitration, which arbitration appellant seeks to stay. We believe the stay should have been granted.

Primarily the question which has arisen between these parties does not arise out of their ownership of the stock of the corporation. There is no issue as to any division of income or control. These are the questions which the parties agreed to arbitrate and there is no agreement to arbitrate any other. Moreover, while the strict rule that any agreement which inhibits the control of the corporation by its directors is ineffectual does not apply to closed corporations where all of the stockholders agree (*Ripin* v. *United States Woven Label Co.*, 205 N. Y. 442), even in the instance of such corporations it is recognized that the business of a corporation cannot be conducted by referring issues that may come up to arbitrators. This includes questions of management policy (*Matter of Burkin* [*Katz*], 1 A D 2d 655).

So that even if the wording of the arbitration agreement would apparently include this question — which we believe it does not — the matter would still not be arbitrable. It is obvious that otherwise either of these parties could destroy the business of the corporation by insisting on arbitrating any of the numberless questions which may develop in the operation of the business.

Nor do we believe, as the majority holds, that there is an exception to the general rule that a business cannot be run by arbitration, that exception consisting of policy questions vital to the life of the corporation. One entering a business relies on his own judgment or on those with whom he is engaged in the enterprise, and not on the judgment of third persons who may be called on to arbitrate. The more important the question, the less should he be compelled to abide by anyone else's decision as to what should be done. And unless he specifically contracts to the contrary, he should not be compelled to do so. To find that respondent here so agreed it is necessary not only to ignore the general principles but it is also required that the agreement to arbitrate be given an interpretation well beyond its plain meaning.

The orders should be reversed and the arbitration stayed.

BOTEIN, P. J., and McNALLY, J., concur with STEVENS, J.; STEUER, J., dissents in opinion in which EAGER, J., concurs.

Orders, entered on April 2, 1965 and August 20, 1965, affirmed, with $30 costs and disbursements to the respondent.